*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0963**

State of Minnesota,
Respondent,

vs.

Mark Anthony Sanders,
Appellant.

**Filed April 18, 2016
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-40272

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County
Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Leslie J. Rosenberg, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Connolly, Judge; and Reilly,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges his conviction of first-degree sale of a controlled substance,

arguing that: (1) the search warrant did not contain sufficient facts to establish probable

cause; (2) his custodial statement to the police officer was involuntary; (3) the district court

abused its discretion by failing to disclose the identity of the confidential informant; (4) the circumstantial evidence was insufficient to establish possession of cocaine; (5) he was substantially harmed by the admission of evidence previously ruled inadmissible; (6) the district court abused its discretion by excluding alternative-perpetrator evidence; and (7) the district court abused its discretion by imposing the presumptive sentence. We affirm.

## FACTS

In October 2013, Minneapolis police officers with the FBI Safe Streets Task Force executed a no-knock search warrant at a residence occupied by appellant Mark Anthony Sanders and his roommate, Richard Fonzy. The search warrant application and supporting affidavit contained information from a Confidential Reliable Informant (CRI) that appellant was trafficking in the illegal sale of cocaine out of his apartment. The search warrant authorized police officers to look for controlled substances including cocaine. Appellant was the target of the warrant. Inside the apartment, police officers discovered baggies containing over 717 grams of cocaine, a Schedule II narcotic, hidden in a hamper in a hallway, as well as digital scales commonly associated with narcotic distribution, ammunition, residue from a white powdery substance, boxes of baking soda commonly used to cut cocaine, and several sandwich baggies with their corners removed, known as "tear-offs."

Police officers arrested appellant and transported him to the Minneapolis police station, where he agreed to be interviewed. The interviewing police officers and appellant discussed the cocaine found in appellant's apartment, the source of the cocaine appellant

2

purchased, the amount of the purchase, the quality of the cocaine, the process of cooking cocaine into crack, appellant's "track[er] phones" or throw-away phones for his customers, and the use of tear-away baggies in selling cocaine. Appellant admitted to purchasing cocaine shortly before the police officers executed the search warrant.

The state charged appellant with one felony count of first-degree controlled substance crime (sale), and one felony count of first-degree controlled substance crime (possession). Following a five-day jury trial, the jury convicted appellant of both offenses. Each offense carries a presumptive prison sentence of 86 months, with a lower range of 74 months and an upper range of 103 months. The Department of Community Corrections and Rehabilitation recommended a bottom-of-the-range sentence of 74 months executed for each offense. At sentencing, the state requested a sentence of 103 months and appellant requested both a downward-durational and dispositional-departure sentence. The district court declined to depart either durationally or dispositionally and denied the state's request to impose a sentence in the upper range of the guidelines. The district court committed appellant to prison for 86 months for first-degree sale of a controlled substance but did not enter judgment on the lesser-included possession charge. This appeal followed.

## D E C I S I O N

Appellant raises seven challenges on appeal. First, appellant argues that the district court erred by denying his motion to suppress evidence because the search warrant lacked sufficient facts to establish probable cause. Second, appellant claims his in-custody statement to police was not voluntary because the officer failed to properly advise him of his *Miranda* rights. Third, appellant argues that the identity of the CRI should have been

3

disclosed. Fourth, appellant alleges that the evidence was insufficient to establish constructive possession of cocaine because the cocaine was found in a common area of the apartment. Fifth, appellant contends that he was substantially harmed when previously excluded evidence was mistakenly admitted during trial. Sixth, appellant argues the district court abused its discretion by excluding alternative-perpetrator evidence and eroding appellant's ability to present a complete defense. Lastly, appellant claims the district court abused its discretion by denying his request for a dispositional or durational departure and imposing the presumptive sentence. We address each argument in turn and conclude that appellant is not entitled to relief on any basis.

## I.

Appellant challenges the district court's determination that the warrant authorizing the search of his residence was supported by probable cause. The United States and Minnesota Constitutions protect individuals from unreasonable searches and seizures and provide that a warrant must be supported by probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10; *see also* Minn. Stat. § 626.08 (2012) ("A search warrant cannot be issued but upon probable cause."). Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quotation omitted). The issuing judge may determine if the search warrant application is supported by probable cause. *State v. Holiday*, 749 N.W.2d 833, 839 (Minn. App. 2008). "We have repeatedly held that, when reviewing a district court's probable cause determination made in connection with the issuance of a search warrant, an appellate court should afford the district court's determination great

4

deference." *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001) (citations omitted). "An appellate court reviews a district court's decision to issue a warrant only to consider whether the issuing judge had a substantial basis for concluding that probable cause existed." *Id*. We utilize a totality-of-the-circumstances test to determine whether the issuing judge had a substantial basis for concluding that probable cause existed. *Wiley*, 366 N.W.2d at 268.

Here, the affidavit accompanying the search warrant application stated that the police officers received information from a CRI that appellant was selling cocaine out of his apartment. A police officer may rely on a CRI's tip to determine that probable cause exists "if the tip has sufficient indicia of reliability." *State v. Cook*, 610 N.W.2d 664, 667 (Minn. App. 2000) (citation omitted), *review denied* (Minn. July 25, 2000). "When assessing reliability, courts examine the credibility of the informant and the basis of the informant's knowledge in light of all the circumstances." *Id*. Further, "an informant who has given reliable information in the past is likely also currently reliable[.]" *State v. Ross*, 676 N.W.2d 301, 304 (Minn. App. 2004). This criteria is fulfilled "by a simple statement that the informant has been reliable in the past because this language indicates that the informant had provided accurate information to the police in the past and thus gives [the district court] reason to credit the informant's story." *Id*. (citing *Wiley*, 366 N.W.2d at 269). The police officer testified that the CRI provided reliable information in the past, leading to the discovery of narcotics and convictions of the defendants involved. Moreover, the police officers corroborated the CRI's information by surveilling appellant's residence for a month prior to executing the search warrant. The totality of the

5

circumstances, including the CRI's past performance coupled with the police department's independent surveillance, supports a probable-cause finding and we determine that the district court did not err in concluding that probable cause existed to search appellant's residence.

## II.

Appellant contends that the district court erred by determining that his statement to the police was voluntary. At the district court level, appellant challenged the admissibility of his police statement on the basis that he was unduly pressured, but he did not argue that the *Miranda* warnings were improperly provided. We address both arguments and determine that the district court did not err.

## A.

We first address appellant's argument that his police statements were not voluntary. "We review the district court's legal determination of whether a defendant's statement was voluntary de novo[,]" but "we accept the underlying factual determinations of the district court regarding the circumstances of the interview unless the findings are clearly erroneous." *State v. Zabawa*, 787 N.W.2d 177, 182 (Minn. 2010). The district court stated that the voluntariness of a confession depends on the totality of the circumstances and cited to the factors outlined in *Haynes v. State of Wash.*, 373 U.S. 503, 83 S. Ct. 1336 (1963), including: the defendant's age, maturity, intelligence, education, experience and ability to comprehend the lack of or adequacy of a warning, the length and the legality of the detention, the nature of the interrogation and whether the defendant was deprived of any physical needs or denied access to friends. The district court addressed each factor and

6

found that appellant was 25 years old, mature and intelligent, understood the questions, and had "some experience" with the criminal justice system.  The district court found that the interview was not prolonged, was not coercive, and was not conducted under poor conditions.  The district court also found that the nature of the interrogation was conducted in a "casual, actually friendly" manner, and found that appellant was not denied access to friends or of any of his physical needs.  The record supports the district court's determinations.  Based upon the totality of the circumstances surrounding appellant's custodial interview, we conclude that appellant's statements were voluntary and the district court did not err in admitting the statements during trial.

**B.**

We next address appellant's argument that the police officer did not properly administer a *Miranda* warning.  Appellant did not raise this issue below, but we address it in the interests of justice.  *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (permitting reviewing court to review issues that would otherwise be waived in the "interests of justice").  A criminal suspect is entitled to effective notice of certain constitutional rights, including the right to remain silent and to have counsel present during a police interview.  *Miranda v. Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 1624 (1966).  Statements are inadmissible if a suspect is subjected to lengthy custodial interrogation before receiving a *Miranda* warning.  *State v. Bailey*, 677 N.W.2d 380, 392 (Minn. 2004).  A suspect may waive the Fifth Amendment privilege against self-incrimination and the right to counsel, but only if the waiver is knowing, intelligent, and voluntary.  *State v. Fox*, 868 N.W.2d 206, 213 (Minn. 2015) (citing *Miranda*, 384 U.S. at 444, 86 S. Ct. 1602).  The state bears

7

the burden of demonstrating valid waiver. *Id*. (citation omitted). "Ordinarily, the State satisfies its burden of proving a knowing, voluntary, and intelligent waiver of *Miranda* rights if it shows: (1) *Miranda* warnings were given, (2) the defendant stated that he or she understood those warnings, and (3) then the defendant gave a statement." *Id*. (citations omitted).

The police officer began the interview by asking appellant about his tattoos and his teeth, and confirming appellant's address and telephone number. Routine booking questions such as these are exempt from *Miranda*. *State v. Tibiatowski*, 590 N.W.2d 305, 309 (Minn. 1999). Following these routine booking questions, the police officer informed appellant:

> Well, I'm sure you're wondering what's going on and why you're down here. . . . [B]ut [since] you're down here I'm going to read you something see . . . something you see on T.V., something you see in the movies. . . . You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to talk to a lawyer now, and have the lawyer present now or at any time during questioning. If you cannot afford a lawyer, one will be appointed for you without cost. Do you understand, Mark?

The police officer asked appellant if he understood his *Miranda* rights, and appellant answered in the affirmative. Appellant then proceeded to discuss the case with the police officer. Appellant admitted to purchasing cocaine in October 2013 and discussed the amount of his purchase, the quality of the cocaine he acquired, and the process of cooking cocaine into crack and selling it. The district court determined that the police officer gave appellant a "complete *Miranda* warning immediately after asking booking questions, and the defendant indicated that he did understand the *Miranda* warning." We agree. The

8

police officer obtained appellant's express waiver of his *Miranda* rights. Therefore, we conclude the district court did not err in denying appellant's motion to suppress the statements made to police because he validly waived his *Miranda* rights.

Appellant argues that the police officer de-emphasized the importance of the *Miranda* warning and failed to confirm that appellant understood each individual right. We determine that appellant expressly waived his *Miranda* rights. However, even if appellant did not expressly waive his *Miranda* rights, waiver may also be implied from the circumstances. *Fox*, 868 N.W.2d at 214. Based on the totality of the circumstances, the colloquy between the police officer and appellant demonstrates that the police officer advised appellant of his *Miranda* rights, appellant affirmatively stated that he understood those rights, and appellant voluntarily participated in a police interview. Appellant's *Miranda* waiver was therefore valid.

**III.**

Appellant argues that the district court abused its discretion by denying his motion to disclose the identity of the confidential informant. "We review a district court order regarding disclosure of a confidential informant's identity for an abuse of discretion." *State v. Rambahal*, 751 N.W.2d 84, 90 (Minn. 2008). The state may withhold a confidential informant's identity because of the state's "legitimate interest in protecting the identity of persons who provide information to law enforcement." *Id.* But the state must disclose the identity of a confidential informant "when the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is

9

essential to a fair determination of a cause." *Id.* (quotation omitted). Appellant bears the burden of establishing the need for disclosure. *Id.*

The district court considers four factors when determining whether to order disclosure, including (1) "whether the informant was a material witness"; (2) "whether the informer's testimony will be material to the issue of guilt"; (3) "whether testimony of officers is suspect"; and (4) "whether the informant's testimony might disclose entrapment." *Id.* Here, the district court properly considered each of these four factors and concluded that (1) the CRI was not a material witness to the crime charged; (2) the CRI's testimony was not material to the issue of guilt because the "greater weight of evidence material to [appellant's] guilt" was established through other evidence; (3) the testimony of the police officers was not suspect; and (4) the CRI's testimony was not needed to disclose entrapment. Based upon its thorough analysis, the district court denied appellant's motion to disclose the CRI's identity. And at trial, appellant argued that the cocaine belonged to his roommate. Appellant did not meet his burden of establishing that disclosure was necessary, and the district court did not abuse its discretion by denying appellant's motion.

**IV.**

Appellant argues that the evidence was insufficient to support the jury's verdict that he possessed cocaine.[1]  Our review of a sufficiency-of-the-evidence challenge is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (quotation omitted).  If a conviction or an element of the criminal offense has been proven by circumstantial evidence, we apply a heightened standard of review.  *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010).  Heightened scrutiny is a two-step process requiring the reviewing court to first identify the circumstances proved and defer to the jury's "acceptance of the proof of these circumstances," and then "examine independently the reasonableness of all inferences that might be drawn from the circumstances proved," including "inferences consistent with a hypothesis other than guilt."  *State v. Porte*, 832 N.W.2d 303, 310 (Minn. App. 2013) (quotations omitted); *Al-Naseer*, 788 N.W.2d at 473-74, 477 (quotation omitted).  When a case involves circumstantial evidence, we defer to the jury's acceptance of the circumstances proved by the state and rejection of evidence that conflicted with those circumstances.  *State v. Silvernail*, 831 N.W.2d 594, 598-99 (Minn. 2013).

---

[1] Appellant challenges the sufficiency-of-the-evidence with respect to the possession of the cocaine in the apartment.  However, he does not challenge the sufficiency-of-the-evidence with respect to the sale of the cocaine.

The state charged appellant with selling and possessing a controlled substance. "A person is guilty of possession of a controlled substance if []he knew the nature of the substance and either physically or constructively possessed it. A person may constructively possess a controlled substance alone or with others." *State v. Denison*, 607 N.W.2d 796, 799 (Minn. App. 2000) (citation omitted). Viewing the evidence in the light most favorable to the verdict and deferring to the jury's credibility determinations, *State v. Franks*, 765 N.W.2d 68, 73 (Minn. 2009), the evidence establishes the following circumstances: controlled substances were found in the apartment, appellant lived at the apartment, police officers discovered a digital scale next to appellant's bed, a second scale and baggies were discovered in the residence, and appellant admitted to police officers that he purchased cocaine shortly before the search warrant was executed.

The second step in the reviewing court's analysis is to determine whether the circumstances proved are consistent with guilt and inconsistent with any hypothesis other than guilt. *Al-Naseer*, 788 N.W.2d at 473. Appellant argues that the evidence could have suggested that the drugs belonged to his roommate. However, appellant's inference is unreasonable in light of the evidence as a whole. Appellant admitted to police officers during the police interview that he purchased cocaine the day before his apartment was searched and asked a female friend to keep the "extras" for him. The circumstantial evidence is sufficient to support appellant's drug-offense conviction.

**V.**

Appellant argues that he was prejudiced by the inadvertent disclosure of inadmissible evidence. Because appellant did not raise this objection at trial, we review

the matter for plain error. *State v. Strommen*, 648 N.W.2d 681, 686 (Minn. 2002). Under the plain-error test, appellant must show (1) an error, (2) that was plain, and (3) that affected appellant's "substantial rights." *State v. Milton*, 821 N.W.2d 789, 805 (Minn. 2012). If all three prongs of plain-error review are satisfied, a reviewing court may decide whether to address the error to ensure "fairness and the integrity of the judicial proceedings." *Id.* (quotation omitted).

Before trial, the district court redacted portions of appellant's police interrogation video referencing appellant's past drug crimes. However, two of the redacted statements were mistakenly played to the jury during trial. The state offered to take a short break to adjust the video, but appellant wanted to continue playing the video to avoid disruption. Appellant did not request a mistrial or ask for a curative instruction. The defense later argued that the comments were "highly prejudicial," and the state argued in response that the defense "acquiesced" in playing the contested portions of the video to the jury. The district court agreed with the state. On appeal, appellant challenges the district court's finding that appellant acquiesced to the contested evidence.

If we determine upon review that any one of the three prongs of the plain-error test is not satisfied, we need not address the remaining elements. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011). Here, we conclude that the inadvertent disclosure of evidence during trial did not affect appellant's substantial rights. "[A]n error affects a defendant's substantial rights if there is a reasonable likelihood that the error had a 'significant effect' on the verdict." *State v. Finch*, 865 N.W.2d 696, 703 (Minn. 2015) (quoting *State v. Sontoya* 788 N.W.2d 868, 873 (Minn. 2010)). Appellant admitted to the

police officer that he purchased cocaine in October 2013, and officers found over 717 grams of cocaine and drug paraphernalia in his residence. To the extent an error occurred, any prejudice resulting from the inadvertent disclosure was minor and did not have a significant impact on the jury's verdict. *See, e.g.*, *State v. Barnes*, 713 N.W.2d 325, 337 (Minn. 2006) (ruling no error occurred where disclosure of defendant's past drug use was inadvertent and "[m]ore importantly, events that occurred later in trial eliminated any prejudice"); *State v. Spann*, 574 N.W.2d 47, 53 (Minn. 1998) (declining to grant mistrial absent a showing that there was a reasonable probability that the outcome of the trial would be different); *State v. Clobes*, 422 N.W.2d 252, 255 (Minn. 1988) (discerning no abuse of discretion in denying mistrial where prejudice was minimal). Given the strength of the state's evidence as a whole, we conclude that the error did not affect appellant's substantial rights.

## VI.

Appellant contends that the district court abused its discretion by excluding evidence related to appellant's alternative-perpetrator defense. A criminal defendant has a due-process right under the United States and Minnesota Constitutions to be treated fairly and to present a complete defense. *See* U.S. Const. amend. XIV, § 1; Minn. Const. art. I, § 7; *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992) (citing *California v. Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 2532 (1984)). This includes the right "to present evidence showing that an alternative perpetrator committed the crime with which the defendant is charged." *State v. Sailee*, 792 N.W.2d 90, 93 (Minn. App. 2010) (quotation omitted). "Alternative perpetrator evidence is admissible if it has an inherent tendency to

14

connect the alternative party with the commission of the crime." *State v. Jones*, 678 N.W.2d 1, 16 (Minn. 2004) (citations omitted). However, a district court may limit such testimony to "ensure that the defendant does not confuse the jury with misleading inferences." *Sailee*, 792 N.W.2d at 93. We review a district court's decision to exclude alternative-perpetrator evidence for abuse of discretion. *Id.* "If we determine that the [district] court erred, the conviction will still stand if the error was harmless beyond a reasonable doubt." *Id.* "The error is harmless if the jury's verdict is surely unattributable to the error." *Id.* (quotation omitted).

Appellant argued that his roommate, Richard Fonzy, was an alternative perpetrator and sought to admit evidence of Fonzy's two prior drug possession offenses, including a 2005 second-degree possession conviction and a 2011 fifth-degree possession conviction. The district court admitted the 2011 conviction but excluded the 2005 conviction, reasoning that the 2005 crime was too remote in time. Appellant argues that the district court erred by excluding evidence of Fonzy's 2005 conviction because it eroded appellant's ability to present a complete defense.

A criminal defendant may present evidence of other crimes, wrongs, or bad acts committed by the alleged alternative perpetrator to "cast reasonable doubt upon the identification of the defendant as the person who committed the charged crime." *Jones*, 678 N.W.2d at 16-7 (citation omitted). This evidence is sometimes referred to as "reverse-*Spreigl*" evidence. *Id.*; *see State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). A defendant seeking to introduce reverse-*Spreigl* evidence on an alternative-perpetrator defense "must first meet the threshold requirement of connecting the alternative perpetrator

15

to the commission of the crime with which the defendant is charged." *Jones*, 678 N.W.2d at 16. If the defendant fails to meet this threshold requirement, the reverse-*Spreigl* alternative-perpetrator evidence is inadmissible. *Id.* However, if the defendant meets the threshold requirement of connecting the alleged alternative perpetrator to the commission of the crime, then the defendant must show "(1) clear and convincing evidence that the alleged alternative perpetrator participated in the reverse-*Spreigl* incident; (2) that the reverse-*Spreigl* incident is relevant and material to defendant's case; and (3) that the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* at 16-17. We review these determinations for an abuse of discretion. *State v. Ashby*, 567 N.W.2d 21, 25 (Minn. App. 1997).

The first prong of the test is not in dispute.

With respect to the second prong, the district court found that the 2005 conviction was too remote in time to the current charge. "Evidentiary rulings concerning materiality, foundation, remoteness, relevancy, or the cumulative nature of the evidence are within the [district] court's sound discretion." *Johnson v. Wash. County*, 518 N.W.2d 594, 601 (Minn. 1994) (quotation omitted). "The closer the relationship between the events, the greater the relevance or probative value of the evidence and the lesser the likelihood the evidence will be used for an improper purpose." *State v. Kennedy*, 585 N.W.2d 385, 390 (Minn. 1998) (citation omitted). The district court found that the older offense was "not related sufficiently in time, place or modus operandi" and reasoned that it was "so remote in time that it simply cannot be said to be probative in any way of the likelihood that the defendant

16

possessed the drugs in this case." We discern no abuse of discretion in the district court's ruling with regard to the relevance or materiality of a ten-year-old conviction.

Regarding the third element, the district court determined that the probative value of the 2005 conviction was "greatly outweighed" by the prejudicial effect because the evidence "would be seeking to have the jury simply label the alternative perpetrator a druggy." On appeal, appellant has not demonstrated that the probative value of the evidence outweighed its prejudicial effect. We therefore hold that the district court did not abuse its discretion in excluding evidence of Fonzy's 2005 conviction.

## VII.

Lastly, appellant argues that the district court's imposition of the presumptive sentence constitutes an abuse of discretion. A reviewing court affords the district court "great discretion" in the imposition of sentences and will reverse a sentencing decision only for an abuse of discretion. *State v. Soto*, 855 N.W.2d 303, 307-08 (Minn. 2014) (quotation omitted). We presume that a sentence within the sentencing range is appropriate. Minn. Sent. Guidelines 2.D (2014). "[A]ny sentence within the presumptive range for the convicted offense constitutes a presumptive sentence." *State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010), *review denied* (Minn. July 20, 2010). Thus, we will only reverse a district court's imposition of a presumptive sentence in rare cases. *Id.*

The presumptive sentencing range for appellant's crimes is 86 months for each offense, with a lower range of 74 months and a higher range of 103 months. The probation department recommended a "bottom of the range" sentence of 74 months. The district court sentenced appellant to the presumptive sentence of 86 months. Appellant argues that

17

the district court "provided no analysis to support its decision" not to impose the 74-month sentence recommended by probation. Minnesota law is clear that "[a]lthough the trial court is required to give reasons for departure, an explanation is not required when the court considers reasons for departure but elects to impose the presumptive sentence." *State v. Van Ruler*, 378 N.W.2d 77, 80 (Minn. App. 1985) (citation omitted). The district court did not abuse its discretion by imposing the presumptive sentence.

**Affirmed.**