*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1230**

State of Minnesota,
Respondent,

vs.

Gabino Otero Labra,
Appellant.

**Filed July 18, 2016
Affirmed
Johnson, Judge**

Ramsey County District Court
File No. 62-CR-13-8998

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

Gabino Otero Labra was convicted of first-degree controlled substance crime based on evidence that he possessed cocaine with intent to sell it. He argues that the district court

erred by denying his motion to suppress evidence. We conclude that police officers had a reasonable, articulable suspicion of criminal activity that justified an investigatory seizure of Otero Labra based on information provided by a confidential informant. Therefore, we affirm.

## FACTS

Otero Labra was arrested and charged after he was found to be in possession of cocaine and intended to sell it. Before his arrest, a St. Paul police officer had been in telephone contact with a confidential informant. At approximately 9:00 p.m. on August 1, 2013, the informant notified the officer that "a Hispanic male" was about to deliver "a large amount of cocaine" to a man at a particular gas station in St. Paul. The officer and another officer, dressed in plain clothes, picked up the informant in an unmarked vehicle and traveled together to the gas station. They parked in a place with a clear view of the gas station. Other police officers, dressed in uniform, were nearby and on alert.

Shortly after the informant and the plain-clothes officers arrived, they saw a Cadillac vehicle stopped at a gas pump. The informant told the plain-clothes officers that the man who was sitting in the back seat of the Cadillac on the driver's side was the Hispanic male who was planning to sell cocaine. The informant said that he or she was able to identify the man because he or she had purchased drugs from him in the past.

After a short time, another man approached the driver's side of the Cadillac on foot. As he did so, the informant announced to the plain-clothes officers that the drug transaction was about to take place. The plain-clothes officers relayed that information to the uniformed officers, who quickly pulled up beside the Cadillac. One of the uniformed

officers approached the rear driver's-side window and ordered the man sitting there, who later was identified as Otero Labra, to show his hands. The officer saw Otero Labra drop something to the floor, near his feet. Because the officer was concerned that Otero Labra might have a weapon, the officer opened the car door, pulled Otero Labra out of the vehicle, and placed him in handcuffs. The officer then observed a clear plastic bag containing a white substance on the floor of the car, in front of where Otero Labra had been sitting.

In November 2013, the state charged Otero Labra with one count of first-degree controlled substance crime, in violation of Minn. Stat. § 152.021, subd. 1(1) (2012). In June 2014, Otero Labra moved to suppress the evidence obtained by the officers when they seized him on August 1, 2013. In October 2014, the parties agreed to submit the motion on a stipulated record consisting of police reports and photographs of the scene of the arrest. In March 2015, the district court decided Otero Labra's motion in a written order. The district court concluded, "Given the totality of the circumstances, the seizure of Defendant's vehicle was supported by reasonable and articulable suspicion of criminal activity." The district court further concluded, "Given the totality of the circumstances, the arrest of the Defendant and search of the Cadillac [were] supported by probable cause." In light of its conclusions, the district court denied Otero Labra's motion to suppress evidence.

The parties later agreed to a stipulated-evidence court trial and agreed that Otero Labra could challenge the district court's suppression ruling on appeal. *See* Minn. R. Crim. P. 26.01, subd. 4. The district court found Otero Labra guilty. The district court imposed a sentence of 103 months of imprisonment. Otero Labra appeals.

**D E C I S I O N**

Otero Labra argues that the district court erred by denying his motion to suppress evidence. He argues that the police officers did not have a reasonable, articulable suspicion of criminal activity to justify a seizure because, he asserts, the informant's tip was not reliable. He does not challenge the district court's conclusion that the officers had probable cause to search and arrest him after seizing him. If the relevant facts are undisputed, this court applies a *de novo* standard of review to a district court's determination of reasonable, articulable suspicion. *State v. Yang*, 774 N.W.2d 539, 551 (Minn. 2009).

**A.**

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment also protects the right of the people to be secure in motor vehicles. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). As a general rule, a law-enforcement officer may not seize a person in a motor vehicle without probable cause. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007). But a law-enforcement officer may, consistent with the Fourth Amendment, conduct a brief investigatory detention of a person in a motor vehicle if the officer has a reasonable, articulable suspicion that the person might be engaged in criminal activity. *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968)). A reasonable, articulable suspicion exists if "the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."

4

*Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. Reasonable suspicion requires "something more than an unarticulated hunch"; "the officer must be able to point to something that objectively supports the suspicion at issue." *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted); *see also Terry*, 392 U.S. at 21-22, 88 S. Ct. at 1880. The reasonable-suspicion standard "takes into account the totality of the circumstances," *i.e.*, "the whole picture." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (quotation omitted); *see also Davis*, 732 N.W.2d at 182.

"The information necessary to support an investigative stop need not be based on the officer's personal observations." *In re Welfare of G.M.*, 560 N.W.2d 687, 691 (Minn. 1997). An investigative stop may be based on an informant's tip "if it has sufficient indicia of reliability." *Id.* An informant may be reliable because he or she has provided truthful information to law enforcement in the past. *See Adams v. Williams*, 407 U.S. 143, 146-47, 92 S. Ct. 1921, 1923-24 (1972). A private citizen who acts as an informant for the first time may be presumed to be reliable. *Davis*, 732 N.W.2d at 182-83; *Marben v. State, Dept. of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). The presumption of reliability is especially strong if the informant identifies himself or herself. *Davis*, 732 N.W.2d at 183; *City of Minnetonka v. Shepherd*, 420 N.W.2d 887, 889-90 (Minn. 1988). Such an informant is more likely to provide truthful information because he or she can be held accountable for providing false information. *Adams*, 407 U.S. at 146-47, 92 S. Ct. at 1923-24; *Shepherd*, 420 N.W.2d at 890. An informant's degree of accountability is greatest when the informant provides information to law-enforcement officers face to face. *Adams*, 407 U.S. at 146, 92 S. Ct. at 1923; *State v. Davis*, 393 N.W.2d 179, 181 (Minn. 1986).

The reliability of an informant's tip also depends on the quality and quantity of the information provided. *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416 (1990). Some informants do not "provide extensive recitations of the basis of their everyday observations." *Id.* at 329, 110 S. Ct. at 2415. But even if an informant provides information that is lacking in detail and cannot be corroborated, law-enforcement officers may be justified in conducting an investigative seizure in certain circumstances. *See id.* at 329-31, 110 S. Ct. at 2415-16. That is so because

> [r]easonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*See id.* at 330, 110 S. Ct. at 2416; *see also Adams*, 407 U.S. at 145-47, 92 S. Ct. at 1923-24. On the other hand, if an informant cannot be deemed reliable, and if the informant provides too little information about suspected criminal activity and too little information about the basis of the informant's knowledge, the reasonable-suspicion standard may not be satisfied. *See, e.g.*, *Florida v. J.L.*, 529 U.S. 266, 270-71, 120 S. Ct. 1375, 1378-79 (2000).[1]

---

[1]Both Otero Labra and the state cite opinions of this court concerning whether an informant's tip provided a law-enforcement officer with probable cause to conduct a search. *See, e.g.*, *State v. Ross*, 676 N.W.2d 301 (Minn. App. 2004), *review denied* (Minn. June 16, 2004); *State v. Cook*, 610 N.W.2d 664 (Minn. App. 2000); *State v. Ward*, 580 N.W.2d 67 (Minn. App. 1998). We acknowledge that, in assessing the reliability of an informant's tip, "[t]he same approach applies in the reasonable-suspicion context [as in the probable-cause context], the only difference being the level of suspicion that must be established." *White*, 496 U.S. at 330-31, 110 S. Ct. at 2416; *see also id.* at 328-29, 110 S.

6

## B.

In this case, the district court expressed concern about "the lack of information that has been submitted with regard to the background of the confidential informant." The district court stated that it normally would expect to receive more information concerning the basis of an informant's knowledge and the informant's reliability. Consequently, the district court considered the suppression issue to be a "close call." Nonetheless, the district court denied the motion to suppress based on its findings that police officers knew the informant's identity, that the informant had told the officers that his or her knowledge was based on prior drug transactions with Otero Labra, that the informant had made statements against his or her own interests, and that the informant's tip that "a Hispanic male" would appear at the gas station to make a cocaine sale was corroborated by the events that occurred as the informant and officers watched.

We agree with the district court that the information provided to the officers before they arrived at the gas station was limited. The informant had provided only a generic description of a suspect and had not provided any information about the vehicle in which the suspect would be traveling. The informant had not provided enough details to allow the officers to conclude with a high level of confidence that the informant had predicted the suspect's future behavior. Before arriving at the gas station, the informant had not explained the basis of his or her knowledge that the suspect would engage in a drug

---

Ct. at 2415. Nonetheless, to ensure that we properly apply the reasonable-suspicion standard, we confine our analysis to precedential opinions arising from the reasonable-suspicion context.

transaction at this particular place and time. If the officers had nothing more than the information provided by the informant before they arrived at the gas station, the tip might have been insufficient to satisfy the reasonable-suspicion standard, for essentially the same reasons as in *J.L.*, in which the Court stated that an informant's tip needs to "identify a determinate person" and "be reliable in its assertion of illegality." 529 U.S. at 272, 120 S. Ct. at 1379.

The distinctive feature of this case, however, is that the informant accompanied officers to the gas station and continued to provide information as events unfolded. The informant identified the suspect, Otero Labra, by his location inside a particular vehicle at the gas station while both the informant and the officers were observing the scene. The informant told the officers that he or she was able to identify Otero Labra because he or she had purchased drugs from Otero Labra in the past. The informant alerted the officers to the anticipated drug transaction when the intended buyer walked toward the Cadillac. The informant's on-the-scene, contemporaneous conveyance of additional information to the officers sufficiently corroborated the earlier tip that a sale of cocaine would take place at that particular place and time.

We reiterate that the reasonable-suspicion standard requires only a minimal showing of "something that objectively supports the suspicion at issue." *Davis*, 732 N.W.2d at 182 (quotation omitted). In this case, the informant's tip bore some "indicia of reliability" based on the informant's admission to having previously purchased drugs from Otero Labra. *See G.M.*, 560 N.W.2d at 691. The reliability of the informant's tip was enhanced significantly by the fact that he or she provided information to officers face to face. *See*

8

*Adams*, 407 U.S. at 146, 92 S. Ct. at 1923; *Davis*, 393 N.W.2d at 181. The officers did not seize Otero Labra based solely on the information the informant had provided before they arrived at the gas station. Rather, the officers seized Otero Labra only after receiving additional information from the informant while both the informant and the officers observed Otero Labra and others at the gas station. Given the totality of the circumstances, we conclude that the officers had a reasonable, articulable suspicion of criminal activity when they approached Otero Labra and seized him.

Thus, the district court did not err by denying Otero Labra's motion to suppress evidence.

**Affirmed.**